# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OZIEL MARTINEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 09 C 2216 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Oziel Martinez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] For the following reasons, the Court denies Martinez's Section 2255 motion.

## BACKGROUND

On August 4, 2005, a grand jury returned a Superseding Indictment that charged Martinez and his co-defendants Adan Martinez, Andrews Macias, Ramiro Anguiano, and Santos Flores with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and in excess of 100 kilograms of marijuana in violation of 21 U.S.C. § 846 in Count I. In Count III, the Superseding Indictment charged Martinez and his co-defendants with possession with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).

On June 14, 2006, Martinez pleaded guilty to Counts I and III of the Superseding Indictment without entering into a written plea agreement with the government. Prior to the

---

[1] On May 4, 2009, the Executive Committee for the Northern District of Illinois reassigned this case to the Court. (R. 5-1.)

entry of Martinez's guilty plea, the government recited the following factual basis for the guilty plea:

> [T]he defendant and his brother Adan Martinez [and] one of the co-defendants, worked for a drug trafficking organization that transported drugs from . . . Texas to, among other places, the Chicagoland area. The defendant participated in [these transactions by], among others things, overseeing the loading of the drugs, arranging for drivers to drive the semi-trailer tractors from Texas to the Chicago area, arranging for the warehouse [to] which these drugs were driven[,] traveling to Chicago to help unload the drugs from the trailer once they arrived in Chicago, and overseeing the retrieval and distribution of the drugs in Chicago.
>
> In September [2004], . . . defendant arranged for two tractor trailers containing illegal narcotics to be driven from Texas to co-defendant Macias's warehouse [in Chicago]. One contained about 90 kilograms of cocaine and the other contained about 1,692 pounds of marijuana, which is 767 kilograms. The defendant informed co-defendant Macias of these shipments and also told him that his brother, Adan Martinez, another co-defendant, would be traveling to Chicago to oversee the delivery of these loads. The defendant also instructed co-defendant Macias to pickup his brother Adan at Midway Airport and to take him to accommodations in Chicago.
> ...
> [T]he defendant also arranged for at least one of the drivers to transport these two shipments of drugs. Co-conspirator A was to drive the first load, and codefendant [Anguiano] was the driver of the second load, which load was the load containing the marijuana.
>
> In connection with the second load, the load that contained the marijuana, the defendant told co-defendant Macias in Chicago to purchase a cellular phone with prepaid minutes on it and to provide him with the telephone number so that number could be placed on a bill of lading that would accompany that shipment of marijuana from Texas to Chicago. . . . [A] few days later, defendant Macias did, in fact, call defendant Martinez and tell him a number of a phone that he had purchased here in Chicago. That telephone number was ultimately placed upon a bill of lading that accompanied that shipment of marijuana from Texas to its intended destination, Chicago.
>
> On or about September 26, 2004, the defendant and his brother oversaw the loading of approximately 90 kilograms of cocaine into a trailer in a trucking yard in Texas. The truck was then driven from Texas to Chicago by Conspirator A. The defendant's brother, as the defendant was aware, flew to Chicago to meet that truck and to oversee the delivery of the cocaine on September 29, 2004. The truck load of marijuana that defendant helped arrange[] was intercepted in downstate Illinois as it was being driven by [Anguiano] to Chicago. That truck contained approximately 1,692

2

pounds of marijuana. After the marijuana was intercepted in downstate Illinois, the defendant received a telephone call from co-defendant Macias, who told him that he had heard that the shipment of marijuana had been intercepted because he had received a telephone call on the phone he had purchased from the state police indicating that was the case. The defendant told co-defendant Macias to pick up his brother from the motel where he was staying. His brother was staying in Chicago intending to unload that truckload of marijuana, and to take him to the bus station so that his brother, Adan Martinez, could return to . . . Texas.

Defendant also helped arrange another load of cocaine to be shipped from Texas to Chicago in October of 2004. On or about October 21, 2004, the defendant called his co-defendant in Chicago, Andres Macias, and told him that Conspirator A, who had delivered the earlier load of cocaine in September, was going to drive another load of cocaine from Texas to the warehouse in Chicago. The defendant told co-defendant Macias that he, the defendant, would be the person overseeing the unloading of the truck and that he would be flying from Texas to Chicago to do so.

About one or two days later, the defendant oversaw the loading of approximately 107 kilograms of cocaine into a tractor trailer in a trucking yard in Texas. The truck was then driven from Texas by Conspirator A, who was supposed to take the truck to the warehouse in Chicago. On or about October 24 of 2004, [] the defendant flew to Chicago, defendant Macias picked him up at Midway airport and took him to a motel near the warehouse. The next day, the defendant went to the warehouse to wait for Conspirator A to arrive with the cocaine. That afternoon the defendant received a call from the co-conspirator indicating that he was in Chicago with the cocaine. The defendant told him to drive the cocaine to the warehouse, the warehouse of co-defendant Macias. That afternoon, Co-conspirator A drove the trailer [to] the warehouse. The defendant, co-defendant Macias, and co-defendant Flores, all believing that the trailer contained cocaine, began to unload the trailer at that time.

(R. 9-2, Ex. A, June 14, 2006, Change of Plea Hr'g, at 12-17.)

Martinez and his attorney agreed to the government's factual basis – except to the extent that it represented that Martinez led, organized, oversaw, or supervised his co-defendants' activities. (*Id.* at 17.) Also, Martinez and his attorney agreed that the offenses to which Martinez was pleading guilty involved approximately 197 kilograms of cocaine and approximately 1,692 pounds of marijuana. (*Id.* at 12, 15.)

The Presentence Investigation Report ("PSR") recommended that the sentencing court

find the base offense level to be 38 pursuant to U.S.S.G. §§ 2D1.1(a)(3), (c)(1) because the offense involved 197 kilograms of cocaine and 1,692 pounds (767.47 kilograms) of marijuana. The PSR also recommended that the sentencing court impose a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b) because Martinez was a supervisor or manager in a criminal activity that involved five or more participants. With a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the PSR recommended that the sentencing court find Martinez's final, adjusted offense level to be 38 which, in combination with his criminal history category of I, resulted in an advisory guideline range of 235 to 293 months' imprisonment.

Martinez filed objections to the PSR, namely, the PSR's recommendation that the sentencing court impose a three-level enhancement to his offense level under U.S.S.G. § 3B1.1(b) was not warranted because he was not a supervisor or manager and the criminal activity did not involve five or more participants. Martinez also argued that the sentencing court should apply the two-level safety-valve reduction pursuant to U.S.S.G. § 5C1.2. (04 CR 0937, R. 182-1, Obj. to PSR, at 17-18.)

On November 17, 2006, the sentencing court conducted Martinez's sentencing hearing. After the parties' initial arguments, the sentencing court partially sustained Martinez's objection to the PSR and concluded that only a two-level enhancement was warranted under U.S.S.G. § 3B1.1(c) because the offense did not involve five individuals. Thereafter, the sentencing court entertained additional arguments from the parties. Martinez argued that a sentence below the advisory guideline range was warranted because he had met with the government for proffer sessions – although he ultimately did not testify against his co-defendants. (R. 9-3, Ex. B, Nov. 17, 2006, Sent. Hr'g Tr., at 9-11.) The government acknowledged Martinez's participation in

4

the proffer sessions, but argued that a reduction under U.S.S.G. § 5K1.1 was not warranted because the information he proffered had not been of significant use. (*Id*. at 14-15.) The government also argued that Martinez's unwillingness to testify established that he was not a cooperating party. (*Id*. at 15-16.) The sentencing court rejected Martinez's arguments and sentenced Martinez to a total of 210 months imprisonment – which was at the low end of the applicable guidelines range.

Martinez appealed his sentence to the United States Court of Appeals for the Seventh Circuit arguing that the sentencing court erred in finding that he was a supervisor or manager under U.S.S.G. § 3B1.1(c) – making him ineligible for the safety-valve reduction. Martinez also argued that the sentencing court failed to consider his arguments for a lower sentence based, in part, on the alleged denial of medical treatment while he was in pretrial detention. Finally, Martinez argued that based on the relationship between the safety-valve reduction and the statutory mandatory minimum sentence, the government was required to prove that he was a supervisor or manager beyond a reasonable doubt. The Seventh Circuit rejected Martinez's appellate arguments and affirmed Martinez's sentence. *See United States v. Martinez,* 520 F.3d 749 (7th Cir. 2008). Thereafter, Martinez filed a petition for a writ of certiorari that the United States Supreme Court denied on October 6, 2008. On April 9, 2009, Martinez filed this timely motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## **LEGAL STANDARD**

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). A district court will

only grant a Section 2255 motion to vacate, set aside or correct a sentence if the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays v. United States,* 397 F.3d 564, 566-67 (7th Cir. 2005) (citations and internal quotations omitted). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). Accordingly, if a Section 2255 petitioner does not raise a claim in his direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller v. United States,* 398 F.3d 644, 648 (7th Cir. 2005), that enforcing the procedural default would lead to a "fundamental miscarriage of justice," *see Anderson v. Benik,* 471 F.3d 811, 815 (7th Cir. 2006), or a change of circumstances involving facts or law. *See Varela,* 481 F.3d at 935-36. Because claims of constitutionally ineffective assistance of counsel usually involve evidence outside the record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Torzala v. United States,* 545 F.3d 517, 524 (7th Cir. 2008).

## ANALYSIS

Construing Martinez's pro se Section 2255 motion liberally, *see Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009), he brings the following claims: (1) certain provisions of 18 U.S.C. § 3553(f) should be severed from the statute, and therefore, the sentencing court erred in

determining that Martinez was not eligible for the safety-valve reduction; (2) the sentencing court erred in calculating his sentence by relying upon facts revealed by Martinez during the immunized proffers; (3) Martinez received an unconstitutional sentence because the sentencing court's factual findings were neither inherent to a jury verdict nor admitted by Martinez; and (4) Martinez's trial counsel was constitutionally ineffective.

## I. Procedurally Defaulted Claims

Martinez has procedurally defaulted his first three Section 2255 claims because he failed to raise them in his direct appeal to the Seventh Circuit. *See Varela,* 481 F.3d at 935. Because Martinez procedurally defaulted these claims, they are barred from the Court's collateral review unless Martinez can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller,* 398 F.3d at 648, that enforcing the procedural default would lead to a "fundamental miscarriage of justice," *see Anderson,* 471 F.3d at 815, or that there has been a change of circumstances involving facts or law. *See Varela,* 481 F.3d at 935-36. Martinez makes no arguments in his legal memoranda to overcome the procedural default of these claims.[2]

Even if Martinez's first three Section 2255 claims were properly before the Court, they fail on the merits. First, the Seventh Circuit has rejected Martinez's argument that because the safety-valve requirements reference the sentencing guidelines and that *Booker* made the guidelines advisory, the safety-valve requirements are also advisory. *See United States v. Tanner,* 544 F.3d 793, 795 (7th Cir. 2008); *see also United States v. Booker,* 543 U.S. 220, 125

---

[2] Martinez's argument made for the first time in his reply brief – that appellate counsel was constitutionally ineffective – may establish cause. *See Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009) (attorney error constituting ineffective assistance of counsel is cause to overcome procedural default). As discussed below, however, appellate counsel was not constitutionally ineffective in the first instance.

7

S.Ct. 738, 160 L.Ed.2d 621 (2005). As the Seventh Circuit explains, "[u]nder the regime of *Booker,* the judge is to treat the guidelines as only advisory even in a safety-valve case. But he cannot treat as advisory the guideline provisions that are preconditions for safety-valve relief, namely 18 U.S.C. §§ 3553(f)(1) and (4)." *Tanner,* 544 F.3d at 795 (citations omitted). The Seventh Circuit's decision is based on well-established precedent that a defendant's guilty plea authorizes a judge to impose the statutory minimum sentence with or without any additional findings. *See United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005); *see also United States v. Washington,* 558 F.3d 716, 720 (7th Cir. 2009) ("*Apprendi* does not apply to facts establishing a statutory minimum") (referring to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

Next, Martinez's argument – that the sentencing court violated U.S.S.G. § 1B1.8 by using information obtained pursuant to a cooperation agreement with the government to support the sentencing enhancements – is not supported by the record because there was no cooperation agreement reached between the parties. Also, the sentencing court's determination that the offense involved 197 kilograms of cocaine and 1,692 pounds of marijuana was based on Martinez's admissions at his change of plea hearing. (Change of Hr'g Tr., at 12, 15.) Likewise, the sentencing court's conclusion that Martinez was a supervisor or manager was also based on Martinez's role in the offense as Martinez admitted at his change of plea hearing. (*Id.* at 2-9.) Meanwhile, there is no evidence in the record that the sentencing court used any protected statements from Martinez's proffer with the government and Martinez fails to identify any such statements.

Martinez's last procedurally defaulted claim, namely, that his sentence was

unconstitutional because the sentencing court's factual findings were neither inherent to a jury verdict or admitted by him, is equally unavailing. Specifically, since *Booker* made the sentencing guidelines advisory, the Seventh Circuit has repeatedly upheld a sentencing court's ability to make factual finding to determine the advisory guideline range. *See United States v. Roti,* 484 F.3d 934, 937 (7th Cir. 2007) ("District judges remain free, as the remedial portion of *Booker* instructs, to make findings of fact that influence sentences, provided that the sentence is constrained by the maximum set by statute for each crime."). Therefore, Martinez's third Section 2255 claim fails on the merits.

## II. Ineffective Assistance of Trial Counsel

Martinez also brings an ineffective assistance of trial counsel claim in his Section 2255 claim, which he has not procedurally defaulted. *See Massaro,* 538 U.S. at 504. To establish constitutionally ineffective assistance of counsel, Martinez must show (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Martinez fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also Amerson v. Farrey,* 492 F.3d 848, 851 (7th Cir. 2007). "[B]ecause counsel is presumed effective, a defendant bears a heavy burden in challenging his attorney's effectiveness." *United States v. Hatten-Lubick,* 525 F.3d 575, 579 (7th Cir. 2008); *see also United States v. Recendiz,* 557 F.3d 511, 531 (7th Cir. 2009) (there is a "strong presumption that the attorney performed

9

effectively").

### A. Cooperation Agreement

Martinez first argues that his trial counsel's failure to secure a "cooperation agreement" constituted ineffective assistance of counsel. Martinez's claim is factually baseless because whether to reward a defendant's cooperation under U.S.S.G. § 5K1.1 is in the government's discretion, and thus his trial attorney had no control over any such cooperation agreement. *See In re United States,* 503 F.3d 638, 641-42 (7th Cir. 2007). As the Seventh Circuit teaches:

> The Supreme Court held in *Wade* that a prosecutor's decision not to file a motion under § 5K1.1 should be treated just like the selection of a charge or a decision not to engage in plea negotiations. Whether to reward a given defendant's cooperation depends on how much assistance the prosecution needs; defendants may compete to supply assistance, and a reduced sentence is a price that the prosecutor pays.

*Id.* (referring to *Wade v. United States,* 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992)); *see also United States v. Martinez-Munguia,* 268 Fed.Appx. 472, 473 (7th Cir. 2008) (unpublished) ("a reduction under 5k1.1, which deals with substantial assistance to the prosecutor, depends on the prosecutor's assent").

Here, the facts reveal that the government did not recommend a reduction under U.S.S.G. § 5K1.1 because the information Martinez proffered had not been of significant use and, significantly, Martinez refused to testify against his co-defendants. As such, trial counsel's performance did not fall below an objective standard of reasonableness because he did not have control over any cooperation agreement. *See Strickland,* 466 U.S. at 688. Instead, it was Martinez's conduct and the government's discretion that caused "the failure to secure a successful cooperation agreement" as Martinez's argues. Therefore, Martinez's first ineffective assistance of trial counsel argument fails.

### B. Manager/Supervisor Enhancement

Next, Martinez argues that his trial counsel was ineffective for failing to convince the sentencing court not to apply the two-level enhancement under U.S.S.G. § 3B1.1(c) based on his role as a manager or supervisor of the criminal activity. As the record indicates, at Martinez's change of plea hearing, his counsel did not agree to the government's factual basis to the extent that it represented or implied that Martinez led, organized, oversaw, or supervised his co-defendants' activities. Moreover, in trial counsel's objections to the PSR and sentencing memorandum, as well as at sentencing, counsel rigorously argued that Martinez was not a manager or supervisor under U.S.S.G. § 3B1.1. In fact, the sentencing court sustained his objection, in part, and only imposed a two-level enhancement for Martinez's role in the offense.

Thus, based on the record, Martinez cannot establish that his trial counsel's performance was deficient because trial counsel's conduct, namely, his well-made arguments against the manager/supervisor enhancement, was not objectively unreasonable under prevailing professional norms. *See Wrinkles v. Buss,* 537 F.3d 804, 813 (7th Cir. 2008). In addition, Martinez fails to make any argument that he was prejudiced by trial counsel's conduct, and thus he has failed to establish the *Strickland* prejudice prong. *See Strickland,* 466 U.S. at 694. Meanwhile, that the government conceded that Martinez did not exercise control over his co-defendants has no bearing on trial counsel's performance because control over his co-defendants is not necessary for a finding under § 3B1.1(c). *See United States v. Pira,* 535 F.3d 724, 730 (7th Cir. 2008) ("[S]ection 3B1.1(c) does not require an explicit finding that the defendant exercised control, so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role.") (citations omitted).

## C. Parsimony Clause

Martinez also argues that his trial counsel's performance was deficient because counsel failed to raise the so-called "parsimony clause" contained in 18 U.S.C. § 3553(a), which instructs sentencing courts to impose sentences that are sufficient, but not greater than necessary, to meet the objectives of the criminal sentence. *See United States v. Bartlett,* 567 F.3d 901, 908 (7th Cir. 2009). The parsimony clause, however, "is nothing more than a command to choose a reasonable sentence, and a properly calculated guidelines sentence is presumed reasonable." *United States v. Williams,* 314 Fed.Appx. 888, 890 (7th Cir. 2009) (citations omitted).

Here, the sentencing hearing transcript shows that when "crafting a reasonable sentence" the sentencing judge considered Martinez's involvement in organizing the drug transactions which involved substantial shipments. (Sent. Hr'g Tr., at 20.) Based on these factors, the sentencing court explained that the low end of the guideline range (210 months) was the appropriate sentence for Martinez. (*Id.*) Accordingly, the sentencing court's reasoning complied with the parsimony provision because it reflected an awareness of his duty to impose a reasonable sentence and the extent of his discretion. *See United States v. Ministro-Tapia,* 470 F.3d 137, 141-43 (2d Cir. 2006); *Bartlett,* 567 F.3d at 909 ("The judge's task is to choose a reasonable sentence").

Because the sentencing court complied with the parsimony provision, any ineffective assistance of counsel claim based on this provision is without merit because Martinez cannot established that he was prejudiced by counsel's conduct. *See Strickland*, 466 U.S. at 694. Moreover, in his sentencing memorandum, trial counsel discussed the various factors under Section 3553. In fact, Martinez acknowledges in his opening memorandum that trial counsel

12

"specifically moved and argued strenuously for a downward variance under 18 U.S.C. § 3553(a) based on multiple factors." (R. 1-1, Mem., at 3.) Thus, Martinez cannot establish that counsel's performance was deficient for failing to raise these arguments. *See Strickland,* 466 U.S. at 688.

### D. Safety-Valve Provision

Finally, Martinez's ineffective assistance of trial counsel based on his interpretation of the safety-valve reduction and Section 3553(f) fails because the Seventh Circuit has rejected any such argument that the guideline provisions which are preconditions for safety-valve relief under Section 3553(f) are advisory. *See Tanner,* 544 F.3d at 795. Therefore, Martinez's last ineffective assistance of trial counsel claim has no basis in law, and thus this claim fails.

## III. Ineffective Assistance of Appellate Counsel

For the first time in his reply memorandum, Martinez argues that his appellate counsel provided constitutionally ineffective assistance of counsel. Although arguments made for the first time in reply briefs are waived, *see Bodenstab v. County of Cook,* 569 F.3d 651, 658 (7th Cir. 2009), the Court addresses Martinez's arguments for the sake of completeness.

As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See id.*; *Sanders v. Cotton,* 398 F.3d 572, 585 (7th Cir. 2005). Therefore, in determining whether Martinez has established the *Strickland* performance prong, the Court must examine the record to determine whether appellate counsel omitted "significant and obvious" issues on appeal. *See Stallings v.*

13

*United States*, 536 F.3d 624, 627 (7th Cir. 2008). To establish the *Strickland* prejudice prong, Martinez must show that there is a reasonable probability that but for his appellate counsel's deficient performance, the result of the appeal would have been different. *See Suggs,* 513 F.3d at 678; *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003). The Court first turns to the *Strickland* performance prong by comparing the claims appellate counsel raised on direct appeal and the appellate claims Martinez argues should have been raised.

On direct appeal, Martinez's counsel made the following arguments to the United States Court of Appeals for the Seventh Circuit: (1) the sentencing court erred in finding that he was a supervisor or manager under U.S.S.G. § 3B1.1(c); (2) the sentencing court failed to consider his arguments for a lower sentence based, in part, on the alleged denial of medical treatment while he was in pretrial detention; and (3) based of the relationship between the safety-valve reduction and the statutory minimum sentence, the government was required to prove that he was a supervisor or manager beyond a reasonable doubt.

In his reply brief, Martinez argues that his appellate counsel should have made the arguments he made in the instant Section 2255 motion, including: (1) certain provisions of 18 U.S.C. § 3553(f) should be severed from the statute, and therefore, the sentencing court erred in determining that he was not eligible for the safety-valve reduction; (2) the sentencing court erred in calculating his sentence by relying on facts he revealed during the immunized proffers; (3) he received an unconstitutional sentence because the sentencing court's factual findings were neither inherent to a jury verdict or admitted by him; and (4) his trial counsel was constitutionally ineffective. Martinez also argues for the first time in his reply brief that his appellate counsel should have raised the issue of "relevant conduct."

As discussed in detail above, Martinez's arguments made in this Section 2255 do not have merit, and it is well-established that appellate attorneys do not have to present losing arguments to provide constitutionally effective assistance of counsel under the Sixth Amendment. *See Whitehead v. Cowan,* 263 F.3d 708, 731 (7th Cir. 2001). In addition, because Martinez agreed that the offenses to which he was pleading guilty involved 197 kilograms of cocaine and 1,692 pounds of marijuana, any relevant conduct argument made on appeal would have been equally without merit. *See United States v. Stephenson,* 557 F.3d 449, 457 (7th Cir. 2009) (admission of relevant conduct is better than jury's finding beyond reasonable doubt). Meanwhile, Martinez does not explain how these arguments – that have no merit – are clearly stronger than the claims appellate counsel actually raised on appeal. *See Suggs,* 513 F.3d at 678. Martinez has thereby failed to establish the *Strickland* performance prong under the circumstances. Because Martinez has failed to establish that his appellate counsel's performance was deficient, the Court need not decide the prejudice prong under *Strickland*. *See Amerson*, 492 F.3d at 851. Martinez's ineffective assistance of appellate counsel claim thus fails on the merits.

## CONCLUSION

For these reasons, the Court denies Petitioner Oziel Martinez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**Dated:** August 10, 2009

                            **ENTERED**

                            *[signature]*

                            **AMY J. ST. EVE**
                            **United States District Court Judge**